```
                                          ┌─────────────────────────────┐
                                          │ USDC SDNY                   │
                                          │ DOCUMENT                    │
                                          │ ELECTRONICALLY FILED        │
                                          │ DOC #: _____       │
                                          │ DATE FILED:  5/10/16        │
                                          └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

KEITH ATKINS,                                   :

                          Petitioner,           :          **REPORT AND**
                                                           **RECOMMENDATION**
              -against-                         :          **TO THE HONORABLE**
                                                           **VALERIE E. CAPRONI**[*]
SUPERINTENDENT MICHAEL J. CAPRA,                :
                                                           13cv5446-VEC-FM
                          Respondent.           :

---------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

          <u>Pro se</u> petitioner Keith Atkins ("Atkins") brings this habeas proceeding
pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction, following a
jury trial in Supreme Court, New York County, on charges of Assault in the Second
Degree and Tampering with Physical Evidence.  Justice Marcy Kahn, before whom the
case was tried, sentenced Atkins, as a persistent violent felony offender, to concurrent
sentences that will require him to serve a prison term of twelve years to life.

          In his petition, (ECF No. 1 ("Petition" or "Pet.")), Atkins incorporates by
reference both claims asserted in his direct appeal.  He thus contends that habeas relief is
warranted because (a) there was insufficient evidence to establish his guilt, and (b) the
trial court improperly allowed the jury to speculate that he might have swallowed certain
evidence not recovered at the scene of his arrest.  (<u>See</u> <u>id.</u> at 3).

---

          [*]       Jordan Reisch, a student at Harvard Law School, provided substantial assistance
in the preparation of this Report and Recommendation.

I.      Factual and Procedural Background

    A.      Trial

        1.      People's Case

The case against Atkins arose out of a single street-level narcotics transaction. Viewed in the light most favorable to the People, as it must be, the evidence would have permitted a reasonable juror to find as follows:

On April 5, 2007, Police Officers Robert Valentin, Michelle Perez, and Christopher Cruz were dressed in plain clothes while searching for a robbery suspect in upper Manhattan. (Tr. 254, 261, 375, 396).[1] While so engaged, Officers Cruz and Valentin observed Atkins approach an unidentified man at the intersection of West 129th Street and St. Nicholas Avenue to inquire whether he wanted "sniff" or "smoke."[2] (Id. at 267-68, 324-25, 398-99). The man responded, "It doesn't matter. Whatever you have." (Id. at 268). Atkins then began walking east on West 129th Street with Officer Valentin following a short distance behind. (Id. at 268-69, 272-73, 400-01).

At the corner of West 129th Street and Eighth Avenue, Atkins spoke briefly with a second unidentified man. (Id. at 274-75, 327). Atkins subsequently walked back in the direction of the first man, with Officer Valentin again following him. (Id. at 274-

---

[1]      "Ex." refers to the exhibits annexed to the Declaration of Assistant Attorney General Thomas B. Litsky, dated November 25, 2013. (ECF No. 7-1). "Tr." refers to the trial transcript. (ECF Nos. 7-2, 7-3). "S." refers to the sentencing minutes. (ECF No. 7-3).

[2]      Users typically "sniff" heroin and cocaine but "smoke" crack or marijuana. (Id. at 324-25).

2

76, 328-30, 410-11).  Atkins then attempted to give certain small objects to the first man in exchange for cash.  (Id. at 276-78, 330-31, 349-50, 399-401, 411-14).  Believing that he had witnessed a narcotics transaction, Officer Valentin displayed his shield and approached Atkins.  (See id. at 279, 335, 378, 389, 401-02).  When Atkins saw Officer Valentin, he put the small objects in his mouth, did a "quick shuffle," "outmanuever[ed]" Officer Valentin, and began running away.  (Id. at 279-80, 351, 402).

Officers Valentin and Cruz pursued Atkins, who was running toward Officer Perez at full speed.  (Id. at 378-79).  Officer Perez  raised her arms to shoulder height with her palms facing outward in an attempt to stop Atkins.  (Id. at 280, 335-36, 378-82).  Even before Officer Perez could identify herself as a police officer, however, Atkins lowered one of his shoulders and rammed into her, knocking her to the ground, and causing her head to hit the concrete.  (Id. at 280-81, 284, 378-79, 382, 402).  Officer Valentin then caught  up to Atkins, wrestled him to the ground, and placed him in handcuffs with the help of Officer Cruz.  (Id. at 280, 402-04).

Once Atkins was restrained, Officer Cruz grabbed Atkins' cheeks and instructed him to spit out the objects in his mouth.  (Id. at 286-87, 405-06).  Atkins eventually spit out two small plastic bags containing heroin.  (Id. at 285-88, 357-62, 405).  A subsequent search led to the recovery of an additional bag of heroin and $202 in cash from Atkins' person.  (Id. at 286-87, 299).

Following the incident, Officer Perez was taken by ambulance to St. Luke's Hospital, which released her later that evening.  (Id. at 383-386).  As a result of having

been tackled, Officer Perez experienced bruising on the left side of her face, swelling and bleeding of her nose, and a great deal of pain.  (Id.).  These symptoms persisted for several days before Officer Perez was able to return to work.  (Id.).

  2. Defense's Case

   Atkins presented two defense witnesses in an effort to suggest that the money found on his person was attributable to lawful employment, rather than drug dealing.  The first witness was Atkins' sister, Debra Carson, who was with him on the date of his arrest, but not when the drug sale allegedly occurred.  She testified that she retrieved Atkins' wallet at Rikers Island approximately one month after his arrest.  (Id. at 453-58).  The second witness, Greg Ingram, testified that Atkins worked with him doing maintenance at both Shea and Yankee Stadiums.  (Id. at 450-52).

  B. Verdict and Sentencing

   On May 14, 2008, after brief deliberations, the jury found Atkins guilty of Assault in the Second Degree and Tampering with Physical Evidence, but not guilty of Criminal Possession of a Controlled Substance in the Third Degree.  (Id. at 613).  Thereafter, on July 1, 2008, Justice Kahn sentenced Atkins, as a persistent violent felony offender, to concurrent prison terms, which amounted, in the aggregate, to an indeterminate term of twelve years to life.  (S. 17).

4

C.    <u>Direct Appeal</u>

On appeal to the Appellate Division, First Department, Atkins contended that (1) there was insufficient evidence to establish his guilt, and (2) the trial court improperly allowed the jury to speculate that he might have swallowed other bags of heroin which were not recovered.  (Ex. A).

On May 29, 2012, the Appellate Division unanimously affirmed the judgment of conviction.  <u>See</u> <u>People v. Atkins</u>, 945 N.Y.S.2d 82 (1st Dep't 2012).  The court held with respect to the sufficiency claim that Atkins' decisions to place bags of heroin in his mouth and knock over a police officer during his attempted flight "supported the conclusion that [he had engaged in] . . . 'an act of concealment' because he believed [the bags of heroin] would be used 'in an official proceeding or a prospective official proceeding.'"  <u>Id.</u> at 83 (quoting N.Y. Penal Law § 215.40(2)).  The court further noted the absence of any statutory "requirement that the evidence was permanently destroyed, or that it was discarded and never recovered."  <u>Id.</u>

The court also rejected Atkins' assertion that there was no proof that he understood the people chasing him were police officers.  The court found that "[t]he jury could have reasonably inferred that [Atkins] acted to avoid arrest for a drug offense," because he ran around a "non-uniformed police officer" who had displayed his badge, and put narcotics into his mouth which he later was forced to spit out.  <u>Id.</u>

5

Finally, the court held that Justice Kahn had "erred in allowing the prosecutor to suggest the possibility that [Atkins] may have swallowed narcotics or other unrecovered evidence," but that this error was "harmless" because the "undisputed evidence that [Atkins] put some bags of heroin in his mouth while fleeing was legally sufficient to support the tampering conviction," and the jury had been instructed not to speculate.  Id.

Atkins subsequently sought leave to appeal to the New York Court of Appeals.  (Ex. D).  On August 20, 2012, the Court of Appeals denied that application.  People v. Atkins, 19 N.Y.3d 994 (2012).

D.    Section 440.10 Motion

On September 12, 2008, while his direct appeal was pending, Atkins filed a pro se motion to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law ("CPL").  (Ex. G).  In that kitchen-sink motion, Atkins maintained that:  (1) the prosecutor had acted in bad faith by presenting felony tampering charges to the grand jury without having informed Atkins at arraignment of his intent to do so; (2) those tampering charges were not supported by adequate evidence at either the grand jury or trial stages; (3) there was no probable cause for his arrest; (4) the trial court erred in denying his motion to dismiss the charges against him at the close of the People's case; (5) the two guilty verdicts were inconsistent; and (6) the evidence was insufficient to support the jury's verdict.  (Id.).  Atkins further contended that his trial counsel was ineffective because he failed to:  (1) challenge the factual sufficiency of the tampering

6

charge in the indictment; (2) visit him in jail or provide him with any paperwork

pertaining to the case; (3) seek suppression of the drugs recovered based on allegedly

contradictory police testimony and a lack of probable cause; (4) cross examine Officers

Perez and Valentin to highlight inconsistencies in their accounts of the incident; (5)

challenge the inconsistency of the verdict; (6) cite any case law to contest the tampering

charge; and (7) challenge the court's decision to advise the jury during its deliberations of

the time when proceedings would end for the day.  (Id.).

      In response, the People argued that the court was required to deny the

motion pursuant to CPL § 440.10(2)(b), which requires denial of the motion when

"sufficient facts appear on the record to permit appellate review," because all of the issues

raised were record based and thus could be reviewed on direct appeal.  (Ex. H).

      By Decision and Order dated January 12, 2009, Justice Kahn rejected

Atkins' claims that his counsel failed to provide him with paperwork or visit him because

they were not supported by any sworn statements or other admissible evidence.  (Ex. I).

The Justice rejected the remainder of Atkins' claims based on CPL § 440.10(2)(b).  (Id.).

    E.   Habeas Petition

      Atkins' pro se Petition is dated July 26, and was filed on August 2, 2013.

(See Pet.).  In that Petition, Atkins has narrowed his claims.  He now contends merely

that:  (1) his conviction on the charge of Assault in the Second Degree was predicated on

his conviction on the count of Tampering with Physical Evidence, which was not proved

beyond a reasonable doubt, thereby requiring that both convictions be set aside; and (2)

the trial court's error in allowing the jury to speculate that he might have swallowed additional unrecovered bags of heroin deprived him of his right to a fair trial.  (Id.).

II.     Discussion

A.     Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

8

As the Second Circuit noted in <u>Jones v. Stinson</u>, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" 229 F.3d 112, 119 (2d Cir. 2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409. This standard does not require that reasonable jurists all would agree that the state court was wrong. <u>Id.</u> at 409-10. Rather, the standard "falls somewhere between 'merely erroneous' and 'unreasonable to all reasonable jurists.'" <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To the extent that a habeas petition challenges factual findings, however, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

9

Section 2254 thus embodies a "'difficult to meet' . . . and 'highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt.'"  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington v. Richter, 562 U.S.86, 102 (2011); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).  Despite this standard, however, if "a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

      B.    <u>Application of Law to Facts</u>

      1.    <u>Sufficiency of the Evidence</u>

Atkins contends that the Tampering with Physical Evidence conviction, upon which his Assault in the Second Degree conviction rests, was based on legally insufficient evidence.  (See Pet. at 3-4, 6).  He argues that he therefore is entitled to habeas relief with respect to both counts.

A federal court reviewing the sufficiency of the evidence underlying a state court criminal conviction must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  To prevail, the petitioner must show that <u>no</u> rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Einaugler v. Sup. Ct. of the State of N.Y., 109 F.3d 836, 839 (2d Cir. 1997) (citing Jackson, 443 U.S. at 324).  In determining whether this standard has been met, a habeas court must view the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor.

Jackson, 443 U.S. at 319.  A petitioner challenging the sufficiency of the evidence

therefore bears a "very heavy burden."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.

2002) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)).

   In determining the sufficiency of the evidence underlying a state court

conviction, a federal court "must look to state law to determine the elements of the

crime."  Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999); see also Jackson, 443

U.S. at 324 n.16 (sufficiency claim must be decided "with explicit reference to the

substantive elements of the criminal offense as defined by state law").  In this case, the

applicable state law is the New York Penal Law.  One of the two counts as to which the

jury returned a guilty verdict charged Atkins with Assault in the Second Degree on a

"felony assault" theory.  (See Tr. 575-76).  That crime requires proof that the defendant

caused physical injury to another person during the "commission or attempted

commission of a felony, . . . or [in the] immediate flight therefrom."  N.Y. Penal Law

§ 120.05(6).  Since Atkins was acquitted of the drug possession charge, the only predicate

felony that could form the basis for his felony assault conviction must be the tampering

charge.  Atkins contends that he consequently is entitled to habeas relief with respect to

both charges because the People failed to prove beyond a reasonable doubt that he was

guilty of felony tampering.  (See Ex. A at 17-18).

   To establish that Atkins was guilty of Tampering with Physical Evidence,

the People had to show that Atkins (a) suppressed physical evidence by an act of

concealment or destruction, (b) did so believing that such physical evidence was about to

be produced or used in an official proceeding or prospective official proceeding, and (c) acted with the intent to prevent such production or use.  See N.Y. Penal Law § 215.40(2).

Atkins advances two theories why the People's proof of tampering is insufficient.  He first maintains that, because the drugs he concealed eventually were recovered, he is, at best, guilty of "attempted tampering," which is a misdemeanor.  His second argument is that the People failed to show that he acted with the intent to frustrate a prospective official proceeding.  (Ex. A at 27).  Neither contention withstands scrutiny.

At the outset, "[t]he offense of tampering does not require the actual suppression of physical evidence, but only that a defendant perform an act of concealment while intending to suppress the evidence."  People v. Eaglesgrave, 108 A.D.3d 434 (1st Dep't 2013).  Accordingly, "once an act of concealment is completed with the requisite mens rea, the offense of tampering has been committed," "[r]egardless of whether the defendant is successful in suppressing the evidence."  Id.

Here, it is undisputed that Atkins concealed two bags of heroin by placing them in his mouth and attempting to flee after Officer Valentin displayed his badge.  (Tr. 279, 285).  Atkins' behavior thus is consistent with what might be expected of a suspect who realizes he is about to be arrested and wishes to avoid prosecution.  It therefore was entirely reasonable for the jury to conclude from this evidence that Atkins believed that the contraband would be produced or used in a prospective official proceeding and intended to prevent such production or use.  See People v. Green, 863 N.Y.S.2d 437 (1st Dep't 2008) ("Defendant's course of conduct supports the inference that when he put an

unknown object into his mouth, he was aware that he was about to be arrested, and supports the additional inference that the object was contraband or evidence that defendant intended to prevent the police from discovering."); People v. Nicholas, 417 N.Y.S.2d 495 (1st Dep't 1979) ("prospective official proceeding" element of tampering satisfied despite lack of any charges because such a proceeding "could readily be contemplated").  Nothing more was required to establish the crime of Tampering with Physical Evidence.

Furthermore, because there was an evidentiary basis for the jurors to conclude that Atkins committed the crime of Tampering with Physical Evidence, there also was an evidentiary basis upon which they could have found him guilty of Assault in the Second Degree since Officer Perez was injured during Atkins' flight from the scene.

Finally, even if the sufficiency of the evidence were a debatable point, the factual findings of a state court must be presumed to be correct.  28 U.S.C. § 2254(e)(1).  Accordingly, to prevail on his insufficiency claim, Atkins would have to adduce clear and convincing evidence that he did not conceal evidence with the intent to prevent it from being used in a future official proceeding.  Id.  Atkins has not even come close to making such a showing.  He therefore is not entitled to habeas relief based on the alleged insufficiency of the evidence.

2.   Prosecutorial Misconduct

Atkins further alleges that the prosecutor's improper remarks during summation deprived him of a fair trial.  (Pet. at 3-4, 8).  Specifically, Atkins contends that

the trial court erred by allowing the prosecutor to encourage juror speculation that Atkins may have swallowed additional unrecovered bags of heroin.  The Appellate Division agreed that this argument was improper, but found the error to be harmless.  See Atkins, 945 N.Y.S.2d at 83 (citing People v. Crimmins, 36 N.Y. 2d 230 (1975)).

        A claim of prosecutorial misconduct during summation requires a court to consider "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  On habeas review, the issue is not simply whether the prosecutor's comments were "undesirable or even universally condemned."  Id. (internal quotation marks omitted).  Accordingly, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (internal quotation marks omitted) (quoting United States v. Frady, 456 U.S. 152, 165 (1982)).  Rather, there must be a showing that the petitioner "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."  Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).  In determining whether the petitioner suffered such prejudice, a court must consider:  "[a] the severity of the prosecutor's conduct; [b] what steps, if any, the trial court may have taken to remedy any prejudice; and [c] whether the conviction was certain absent the prejudicial conduct."  Id. (citing Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991)).

14

In advancing the argument that Atkins might have swallowed additional heroin that never was recovered, the prosecutor was simply pursuing a theory that the trial court itself had previously accepted.  After the defense rested, Atkins' counsel sought to have the tampering charge dismissed, arguing that Atkins had merely "attempted to do something" with the bags of heroin that were recovered, and that this attempted tampering constituted a misdemeanor, which could not serve as the predicate for a felony assault charge.  (Tr. 465, 467, 475-76).  The prosecutor countered that there was an evidentiary basis for the tampering charge because the heroin need only have been concealed, not destroyed.  (Id. at 468).  The prosecutor also argued that, even if the destruction of evidence were necessary to establish tampering, there was "a reasonable inference to be made . . . [that Atkins] could have had more than two bags in his mouth [and] . . . swallowed some."  (Tr. 469).  Although Atkins' counsel maintained that this alternative argument was based on "pure speculation," (id.), Justice Kahn found that "an inference . . . [could] reasonably be drawn that there was a third bag in [Atkins'] mouth that he may have swallowed" because no one had testified as to how many bags Atkins placed into his mouth.  (Id. at 474; see also id. at 471 ("I don't think it would be speculative for the jury to think there was another one there in addition to the two.")).  Subsequently, the prosecutor made that very argument to the jury during his summation.  (Id. at 553).

In these circumstances, even if the inference urged by the prosecutor was unwarranted, it previously had received the imprimatur of the court outside the presence

of the jury.  This therefore was not a circumstance in which a prosecutor wrongfully

sought to inflame a jury by advancing an argument that he knew to be unjustified and

prejudicial.  Rather, any error on the part of the prosecutor was unintentional.

       Moreover, immediately after Atkins' counsel objected to the prosecutor's

summation remarks, stating that there was no evidence to support the contention, Justice

Kahn instructed the jury that it could not "speculate on matters not in evidence" and could

only "draw conclusions which [it] deem[s] reasonable from the evidence that [it] heard."

(Id. at 553).  Justice Kahn also gave the jurors similar instructions both before and after

counsel's summations.  (See, e.g., id. at 515 (instruction prior to summation that "what

the lawyers say in their summation is not evidence"), 562 (post-summation instruction

that the jurors "must not speculate or guess," but must "[m]ake . . . decisions only on the

evidence or lack of evidence presented")).  In the absence of any evidence to the contrary,

the jurors must be presumed to have followed the court's instructions not to speculate.

CSK Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009).  Here, of course, Atkins has

pointed to no such evidence.  He therefore cannot show that the jury verdict turned on the

prosecutor's objectionable argument.

       Furthermore, even if the prosecutor and trial court both erred, there was

overwhelming evidence of Atkins' guilt.  Indeed, as the Appellate Division correctly

determined, "[t]he undisputed evidence that [Atkins] put some bags of heroin in his

mouth while fleeing was [alone] legally sufficient to support the tampering conviction"

since the heroin had at that point successfully been concealed.  Atkins, 845 N.Y.S.2d at

83.  In light of that evidence, Atkins cannot show, as he must, that he suffered actual prejudice.  Nor is there any basis upon which this Court could conclude that the state court's determination that any error was harmless was contrary to, or constituted an unreasonable application of, federal law.

Atkins' claim concerning prosecutorial misconduct therefore does not entitle him to any relief in this forum.

III.   <u>Conclusion</u>

For the foregoing reasons, the Petition should be denied.  Furthermore, because Atkins has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

IV.   <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, to my chambers at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Caproni.  The failure to file timely objections will result in a waiver of those

17

objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Dated:       New York, New York
             May 10, 2016

                         _____
                              FRANK MAAS
                         United States Magistrate Judge


Copies to:

Respondent's counsel (via ECF)

Keith Atkins (via U.S. Mail)
08-A-3967
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562